IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GARY PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-4044-CV-C-NKL |
| ) | |
| NORTH CALLAWAY SENIOR CITIZENS ) | |
| CENTER, et al., ) | |
| Defendants. ) | |
| ) | |

**O R D E R**

Pending before the Court are Plaintiff Gary Payne's motion for summary judgment on his claim that Defendant North Callaway Senior Citizen Center discriminated against him on the basis of race, defamed him, and intentionally inflicted emotional distress in denying his application for tenancy [Doc. # 28] and the Center's motion for summary judgment on the same claims [Doc. # 21]. Also pending before the Court is Payne's motion for extension of time to file a reply in support of his motion for summary judgment [Doc. # 30]. For the following reasons, the Court denies Payne's motions and grants the Center's motion.

**A.  Background**

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether summary judgment is appropriate, the Court must look at the record and draw any inferences in the light most favorable to the non-moving party.

1

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Id.* at 248.

Parties must support their assertions "by citing to particular parts of materials in the record...or showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Payne did not file a response to the Center's motion for summary to judgment, but merely responded by filing his own motion for summary judgment. Payne's motion does not contain a section of uncontroverted facts. It is difficult to distinguish Payne's statements of fact from Payne's argument, and, with only one exception, Payne cites to the record for neither. Regardless, because Payne is proceeding *pro se*, the Court has attempted to search the record for facts supporting Payne's arguments.

The following facts appear to be uncontroverted. Payne is a Missouri resident. The Center is a Missouri-based non-profit corporation that provides housing for elderly residents of low or moderate income. Defendants Stubblefield, Walden, Parsons, and Byrd were all members of the Center's Board of Directors at all times relevant to this action. Payne applied to live at the Center in June, 2010. After Payne submitted his application, Walden performed a background check, which revealed that Payne had been convicted of third-degree assault. Walden informed Payne that the Center had rejected his application due to an unsatisfactory criminal background check. The Center had previously rejected the application of a

Caucasian individual who had been convicted of a violent crime. Payne filed a complaint with the Missouri Commission of Human Rights, claiming that the Center had rejected his application based on race. The Commission denied Payne's complaint, because its "investigation found that others outside of Complainant's protected category have also been denied for similar reasons." [Doc. # 22-3 at 4].

Payne alleges, but the Center denies, that several members of the Board made defamatory statements about him when interviewed as part of the Commission's investigation and that these statements were intended to, and did, cause him emotional distress. Specifically, Payne alleges that Walden stated to others that Payne had "been stalking her and tried to run her off the road" with his car and that Parsons and Byrd had stated to others that Payne was a "drug addict." [Doc. # 4 at 7].

When a party serves a written request to admit, every matter included in that request "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). The Center has represented to the Court that it submitted such a request to Payne that Payne did not answer. [Doc. # 22 at 3]. Payne has not disputed this representation, and has not motioned the Court to withdraw or amend these admissions. Accordingly, the Court must treat the following as conclusively established:

Defendants did not discriminate against Plaintiff because of his race in

3

rejecting his application for residency. [Doc. # 22-4 at 2].

Defendant Walden, Parsons, and Byrd did not intentionally and knowingly make false statements and accusations about Plaintiff as referenced in Paragraph 20 of Plaintiff's Complaint. [Doc. # 22-4 at 1].

Plaintiff has not suffered emotional distress for any alleged action on the part of the Defendants. [Doc. # 22-4 at 2].

### B.     Payne's Discrimination Claims

Payne claims that the Center discriminated against him based on race in violation of 42 U.S.C. Section 3604, 42 U.S.C. Section 1981, and 42 U.S.C. 1982. To recover on his claim he must "produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden-shifting framework. *Gallagher v. Magner*, 619 F.3d 823, 831, 839 (8th Cir. 2010) (internal quotes omitted), *cert. granted on other grounds*, --- S.Ct. ----, 2011 WL 531692 (2011). The Court agrees with the Center that Payne has not asserted a claim under the *McDonnell Douglas* framework because, for example, Payne has not produced any arguments or evidence that the Center's policy of rejecting housing applications from individuals with convictions for violent crimes is a pretext for racial discrimination. *See id.* at 831. Thus, the Court examines Payne's claims for evidence of direct discrimination, or "evidence showing a specific link between the alleged discriminatory animus and the challenged decision." *Id.* at 831 (internal quotes omitted).

Payne first argues that he was discriminated against because the minutes of one of the Center's Board meetings reflects that Stubblefield expressed concern that residents did not

want Payne to live there.  Although this evidence could suggest racial discrimination, the comment is facially race-neutral and could just as easily refer to Payne's history of violent crime and drug arrests.  In fact, the minutes of that meeting reflect that Board members were discussing Payne's history of violent crime and drug crimes in close proximity to Stubblefield's comment.  [Doc. # 22-3 at 104].  Payne next argues that Walden spoke to the employer of Payne's son, but does not explain how that is relevant to any of his claims, and its relevance is not apparent to the Court.

Payne also argues that four current residents at the Center, all Caucasian, have been convicted of crimes but were still approved for residency.   Although this argument could also support a finding of discrimination, Payne has not demonstrated any factual support for his allegation.  Payne has not cited to the record in support of his argument.  In fact, the only list of tenants currently in the record does not list two of these four residents.  [Doc. # 22-3 at 69-70].  Of the remaining residents, there is no evidence in the record that resident Bob Knipp was ever charged with a crime and the record reflects that resident Virgil Erwin's only convictions are for DWIs.  That the Center approved Erwin while rejecting Payne does not suggest racial discrimination because the Center's written policy, as well as its statements to Payne, reflect that it rejects applications based on the violence of the crime, and not necessarily the severity of the punishment.  Further, the record reflects that the only other applicant for residence with a prior conviction for assault was a Caucasian man whose application was rejected by the Center.  Thus, Payne has not shown any evidence to support his claim for racial discrimination.

5

Further, Payne did not file an opposition to the Center's motion for summary judgment, and the discussion above demonstrates that Payne has marshaled almost no facts to support the allegations in his complaint. Further, by failing to respond to the Center's request for admission within thirty days, Payne has admitted the absence of racial discrimination in the Center's decision to reject his application. In light of these facts, no reasonable juror could conclude that the Center discriminated against Payne because of race, and summary judgment is thus appropriate for the Center on Payne's discrimination claims.

### C.     Payne's Claim for Defamation

The elements of defamation in Missouri are: "(1) publication, (2) of a defamatory statement, (3) which identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation." *Riley v. Riley*, 340 S.W.3d 334, 337 (Mo. Ct. App. 2011). Because Payne is not a public figure, the requisite degree of fault is negligence. *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 127 (Mo. Ct. App. 2010).

In support of his claim for defamation, Payne only argues that Walden, Parsons, and Byrd all told Mrs. Herring, who investigated Payne's Human Rights Commission claim against the Center, that Payne had a drug problem. But Payne has not produced evidence that these statements are false or that these Defendants were negligent as to the falsity of these statements in speaking them. Payne has not cited to the record in making his argument. The only evidence in the record reflects that Payne has multiple charges and convictions for drug-related offenses. [Doc. # 22-3 at 78, 79, 83]. Payne has not argued that the Center lied about

6

conducting a background check on Payne or that this background check would have failed to reveal his drug convictions. In addition, by failing to respond to the Center's request for admissions, Payne has admitted that these Defendants did not make the statements which he alleges to be defamatory.

On this record, drawing all reasonable inferences in favor of Payne, the Center is entitled to summary judgment on Payne's claim for defamation.

### D. Payne's Claim for Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress in Missouri are: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. 2010). The only element of Payne's claim for intentional infliction of emotional distress for which Payne argues or refers to any evidence is the element of damages. On the element of damages, Payne admitted, by failing to respond to the Center's request for admissions within thirty days, that he has not suffered any emotional distress. Although Payne attempted to argue otherwise in his motion for summary judgment, his admission "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). Even if Payne could establish that he suffered emotional distress, Payne has not presented any facts or argument to support a claim that any of the Center's actions were outrageous or reckless. Thus, no reasonable juror could conclude that the Center intentionally inflicted emotional distress on Payne, and the Center is entitled to summary

7

judgment on this claim.

### E. Payne's Claims Raised for the First Tme in Briefing for Summary Judgment

Payne includes a separate section in his motion for summary judgment to discuss the actions of the Center's Board Member Doug Dillard in shaking his fist at Payne, which Payne claims constitutes harassment. But Dillard is not a party to this action, there is no discussion of Dillard or Dillard's actions in Payne's complaint, and Payne does not explain how Dillard's action is relevant to any of his other claims. Thus, the Court need not address this portion of Payne's briefing.

### F. Payne's Motion for Extension of Time to File a Reply in Support of his Motion for Summary Judgment.

The deadline for Payne to file a reply in support of his motion for summary judgment was December 5, 2011. On December 9, 2011, Payne filed a motion for extension of time, stating only: "I was not aware when I received this on Dec 1st that I needed to respond to this. When I called the clerk on Dec 8th I was told it was due Dec 5th." [Doc. # 30 at 1]. The Court can grant extensions of deadlines for good cause when requested before the deadline expires, and can grant extensions requested after the deadline if the requesting party shows excusable neglect. FED. R. CIV. P. 6(b); *see also* Local Rule 16.3. Payne filed this motion after the deadline, has shown neither good cause nor excusable neglect, and failed to comply with the requirements set out in the Court's scheduling Order. [Doc. # 19 at 3]. The Court finds that extending Payne's time to file a reply would unnecessarily extend this litigation in a way that would be unfair to the Center, especially since this litigation has been

8

judgment on this claim.

### E. Payne's Claims Raised for the First Tme in Briefing for Summary Judgment

Payne includes a separate section in his motion for summary judgment to discuss the actions of the Center's Board Member Doug Dillard in shaking his fist at Payne, which Payne claims constitutes harassment. But Dillard is not a party to this action, there is no discussion of Dillard or Dillard's actions in Payne's complaint, and Payne does not explain how Dillard's action is relevant to any of his other claims. Thus, the Court need not address this portion of Payne's briefing.

### F. Payne's Motion for Extension of Time to File a Reply in Support of his Motion for Summary Judgment.

The deadline for Payne to file a reply in support of his motion for summary judgment was December 5, 2011. On December 9, 2011, Payne filed a motion for extension of time, stating only: "I was not aware when I received this on Dec 1st that I needed to respond to this. When I called the clerk on Dec 8th I was told it was due Dec 5th." [Doc. # 30 at 1]. The Court can grant extensions of deadlines for good cause when requested before the deadline expires, and can grant extensions requested after the deadline if the requesting party shows excusable neglect. FED. R. CIV. P. 6(b); *see also* Local Rule 16.3. Payne filed this motion after the deadline, has shown neither good cause nor excusable neglect, and failed to comply with the requirements set out in the Court's scheduling Order. [Doc. # 19 at 3]. The Court finds that extending Payne's time to file a reply would unnecessarily extend this litigation in a way that would be unfair to the Center, especially since this litigation has been

delayed and confused by Payne's failure to file a response to the Center's motion for summary judgment. Even if the Court allowed Payne a reply, Payne could not change the fact that he failed to respond to the Center's motion for summary judgment and failed to respond to the Center's request to admit. The Court thus denies this motion.

**G.     Conclusion**

Accordingly, it is hereby ORDERED that Payne's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED on all claims. Payne's motion to extend time to file a reply is DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: December 19, 2011
Jefferson City, Missouri

9